UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOMMY NGUYEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:24 CV 1310 RWS |
| | ) |
| WELLS FARGO CLEARING SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

In 2023, Wells Fargo rehired Tommy Nguyen as a financial advisor. Wells Fargo paid him a nearly one million dollar bonus to return to Wells Fargo and bring his clients with him. Wells Fargo claims the bonus was a forgivable loan tied to his years of service with the company. Nguyen insists there were no repayment requirements.

Nguyen's employment with Wells Fargo apparently did not go as either party expected, and he left before he accrued enough time of service for the loan to be forgiven. As a result, Wells Fargo asked Nguyen to repay the bonus which was secured by a promissory note he signed. When Nguyen obtained his securities license, he registered with the Financial Industry Regulatory Authority (FINRA) and the Securities Exchange Commission, and in doing so executed a Form U-4 requiring him to "arbitrate any dispute, claim or controversy that may arise

between me and my firm." Despite this requirement, Nguyen brought this action against Wells Fargo claiming that he was misled into repaying his bonus and his rehiring at Wells Fargo was doomed to failure by the company's shoddy support services.

Wells Fargo seeks to stay this case and compel arbitration in accordance with Nguyen's obligations as a registered person with FINRA and the numerous employment documents he signed. Nguyen opposes arbitration, claiming that the United States Supreme Court invalidated FINRA's private arbitration mandate. As discussed below, it did not. I must stay this case while Nguyen arbitrates his claims with Wells Fargo for the following reasons.

## Background Facts

Wells Fargo is a broker-dealer registered with FINRA and the SEC. Nguyen is a financial advisor who was employed by Wells Fargo initially in 2011 and more recently in 2023. Financial advisors like Nguyen make investments on behalf of their customers through broker-dealers like Wells Fargo.

Nguyen was already registered with FINRA when he began communicating with Wells Fargo regarding possible reemployment in 2023. To become a registered person, Nguyen executed a Form U-4. He also executed one of the forms each time he changed employers. The Form U-4 Nguyen signed to work at Wells Fargo states as follows:

2

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs[1] indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

ECF 12-1 at 27, 44.[2]  FINRA Rule 13200 states that a dispute must be arbitrated if it "arises out of the business activities of a member or an associated person and is between or among Members and Associated Persons."  FINRA Code of Arbitration Rule 13200(a) (cleaned up).  FINRA Rule 13100 defines a "Member" as "any broker or dealer admitted to membership in the FINRA," and defines an "Associated Person" as a "person associated with a member," including "[a] natural person who is registered or has applied for registration under the Rules of FINRA."  FINRA Code of Arbitration Rule 13100(b), (q).  Under these definitions, Wells Fargo is a Member and Nguyen is an Associated Person.  Section 4 of the Form U-4 lists FINRA as the SRO that governs the relationship between Nguyen and Wells Fargo.  ECF 12-1 at 16.  Wells Fargo signed Nguyen's Form U-4, too.  ECF 12-1 at 28, 45.

---

[1] SRO stands for self-regulatory organization.

[2] As he was previously employed by Wells Fargo in 2011, there are two Form U-4s submitted by Nguyen in connection with his employment at Wells Fargo.  Both appear in the record at Exhibit 12-1.

3

Nguyen also agreed to arbitration by signing a letter from Wells Fargo when he completed his Form U-4 in 2011 and again in 2023.  ECF 12-1 at 48, 49.  These letters were to "inform or remind you that the Form U-4 includes a Pre-Dispute Arbitration Clause."  *Id.*  These letters set out the language of the arbitration clause and explain that "you are giving up the right to sue a member in court, including the right to a jury trial."  *Id.* (cleaned up).

On February 27, 2023, Nguyen signed an offer letter with Wells Fargo to indicate that he "accept[ed] and agree[d] to all terms and conditions of [his] offer of employment." ECF 12-1 at 52-54.  The offer letter incorporates a mutual arbitration agreement, which was also signed by Nguyen on February 27, 2023, and states in pertinent part:

> Wells Fargo and I mutually agree that any legal Claims arising out of my application for employment, employment, or separation from employment with Wells Fargo shall be resolved by final and binding arbitration. Except as noted below, Wells Fargo and I agree to waive our rights to pursue any Claims in court or before a jury. This Agreement is subject to the Federal Arbitration Act.

ECF 12-1 at 60.  Under the terms of the agreement, because Nguyen was registered with FINRA and agreed to arbitrate claims against Wells Fargo by signing a Form U-4, "Wells Fargo and I will arbitrate, under then-current FINRA rules, any disputes with Wells Fargo concerning my application for employment, employment, or separation of employment, to the extent that Claims may be arbitrated at FINRA for resolution through final and binding arbitration."  *Id.*

4

Nguyen's offer letter additionally indicates that "[t]his offer letter, including the Arbitration Agreement, constitutes the entire agreement between you and Wells Fargo.  No other guarantees or promises of any kind have been made concerning the terms of your employment.  By signing and submitting this offer letter, you accept and agree to all terms and conditions of this offer of employment." ECF 12-1 at 53-4.

According to Wells Fargo, it provides bonus payments as forgivable loans for its financial advisors which are evidenced by promissory notes.  If an advisor remains employed by Wells Fargo for a specific amount of time, the debt is forgiven.  If the advisor's employment is terminated for any reason before the loan is completely forgiven, the loan is accelerated and begins bearing interest.

In this case, Nguyen signed a promissory note promising to repay Wells Fargo $924,173.00.[3]  ECF 12-1 at 62-5.  Directly above the signature line is the language that "**THIS NOTE CONTAINS A BINDING MUTUAL ARBITRATION PROVISION, WAIVER OF A JURY TRIAL, AND A CLASS ACTION WAIVER, ALL OF WHICH MAY BE ENFORCED BY THE PARTIES**." *Id.* at 65  (emphasis in original). The referenced arbitration provision states in pertinent part as follows:

> Wells Fargo Advisors and you (collectively, the "Parties") agree that any actions or claims instituted by you or Wells Fargo Advisors as a result of (a)

---

[3] He admits he received a lump sum bonus payment in the same amount.  ECF 1 at 7.

>any controversy arising out of, or in connection with the validity, enforcement or construction of, this Note as well as (b) any actions or claims concerning your application for employment, employment, or separation from employment shall be resolved by final and binding arbitration under the then-current Rules of the Financial Industry Regulatory Authority ("FINRA") . . . .  By entering this Agreement to arbitrate, you and Wells Fargo Advisors are waiving the right to bring any claims/actions noted herein in a court or before a jury.  This Agreement is subject to and shall be governed by the Federal Arbitration Act.

*Id.* at 63-4. The Note further states that Nguyen's "employment with the Firm or any successor company end[ing] for any reason or no reason" would constitute an event of default and that, upon such an event, "Wells Fargo Advisors may, at its option, declare the entire unpaid principal balance of this Note immediately due and payable, regardless of any prior forbearance." ECF 12-1 at 62.

Finally, Nguyen also signed an offer summary in connection with his offer of employment, which calls his loan a transitional bonus and contains an arbitration provision nearly identical to his promissory note. ECF 12-1 at 68-77.

Nguyen voluntarily terminated his employment with Wells Fargo before his bonus/loan was forgiven.  He then failed to pay Wells Fargo the balances due on the promissory note upon the termination of his employment.  After Wells Fargo sent three demand letters for payment of the balances, Nguyen brought this diversity action alleging that Wells Fargo committed fraud by telling him that he was getting a bonus but then requiring him to sign a promissory note and treating his bonus as a forgivable loan, acted negligently by failing to provide him with

6

"properly functioning emails and phone numbers," and constructively discharged him. Nguyen's complaint fails to specify which State's law he seeks to apply.[4] ECF 1.

## Discussion

"Arbitration is a matter of contract, meaning that disputes are arbitrable only to the extent an agreement between the parties says so." *Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021) (cleaned up). "When a motion to compel arbitration is brought by a party, courts must first determine whether the parties agreed to arbitrate, and, if so, then what their arbitration agreement covered." *BSI Group LLC v. EZBanc Corp.*, 122 F.4th 712, 715 (8th Cir. 2024). The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022).

Here, Wells Fargo argues that the Federal Arbitration Act (FAA) applies and compels Nguyen to arbitrate his claims. The FAA applies to contracts evidencing transactions "involving commerce." 9 U.S.C. § 2. The Supreme Court has interpreted this provision broadly as exercising the full scope of Congress's power under the Commerce Clause. *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–77 (1995). Although Nguyen claims he cannot be forced to

---

[4] As both cite Missouri law in their briefs, the Court will assume it applies.

arbitrate, he does not contest Wells Fargo's assertion that the FAA is applicable to the contract at issue, and the Court finds the statute applies.

>Under the FAA:
>
>A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (cleaned up). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (cleaned up). Accordingly, where there is an enforceable agreement to arbitrate, federal courts "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4.

The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. "But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment." *Nebraska Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737,
8

741-42 (8th Cir. 2014) (cleaned up).  Such treatment is appropriate here where Wells Fargo has filed additional exhibits relating to Nguyen's employment and relied on matters outside the pleadings, and Nguyen does not dispute the authenticity or admissibility of these documents.[5]  *See id.*

Attempting to sidestep the myriad of documents he signed agreeing to arbitrate (and those acknowledging that he did so), Nguyen throws up a litany of defenses, including that Wells Fargo never signed the mutual arbitration agreement and that the promissory note is wholly unenforceable for lack of consideration.  (Presumably the Court is to ignore payment of nearly one million dollars when considering this argument).  To explain away his promise to "arbitrate any dispute, claim or controversy that may arise between me and my firm that is required to be arbitrated under the rules" from his Form U-4, Nguyen argues that it is "not an agreement between the parties in this action." ECF 13 at 2.  Not so, as *both* Nguyen and Wells Fargo signed it.  ECF 12-1 at 28, 45.  To obtain a FINRA license, an applicant (here, Nguyen) must be sponsored by a broker-dealer (here, Wells Fargo), which submits a U-4 application on the applicant's behalf for FINRA's review and approval.  In doing so, the broker-dealer and the applicant

---

[5] Attacking their enforceability isn't the same thing.  Nguyen doesn't claim he didn't actually sign these documents, or that the Court isn't permitted to consider them for some other reason.

9

*both* agree to take on obligations including, as relevant here, submission of their claims to private FINRA arbitration.

Nguyen leans heavily into his primary argument – that under the Supreme Court's recent opinion in *SEC v. Jarkesy,* 603 U.S. 109 (2024), he can no longer be compelled to arbitrate his civil claims for damages. But the Supreme Court had no occasion in *Jarkesy* to consider whether private parties – such as Nguyen and Wells Fargo – could be compelled to honor their agreements to arbitrate civil claims for damages. Instead, the "case posed a straightforward question: whether the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for securities fraud." *Id.* at 120 (cleaned up). The answer to that question was, "Yes." *Id.* at 121. But the SEC is not involved in this case, which does not concern enforcement proceedings, civil penalties, or securities fraud. The *Jarkesy* Court did not consider agreements to arbitrate between private parties, and its pronouncement that "common law claims must be heard by a jury" cannot be construed as the "Get Out of Arbitration Free" card that Nguyen wishes it were. *See id.* at 120. And whatever the SEC can (or, more accurately, cannot) do in the context of civil enforcement proceedings has no bearing on what private parties can (or in this case, must) do in the context of agreeing to arbitrate their private disputes. *Jarkesy* does not obviate Nguyen's obligation to arbitrate his disputes with Wells Fargo in this case.

10

Conspicuously absent from Nguyen's brief is the citation to any case actually applying the interpretation of *Jarkesy* advanced here. Not surprising, since the Court's own research didn't uncover any, either. To the extent Nguyen relies on any opinions issued in the *Alpine Securities Corp. v. Financial Ind. Regulatory Auth.* case as authority in support of his position, it is readily distinguishable as involving FINRA's self-regulatory enforcement proceedings against one of its members, *not* (as would be relevant here) private arbitration between a member and an associated person. *See Alpine Securities Corp.*, 121 F.4th 1314, 1337 (D.C. Cir. 2024) (setting out the nature of the dispute and the issues before the Court before concluding only that FINRA may not expel Alpine until SEC reviews the order on its merits).

As discussed above, Nguyen's argument that he can't be forced to arbitrate in light of *Jarkesy* fails. As a result, the Court now asks "whether the parties agreed to arbitrate, and, if so, then what their arbitration agreement covered." *BSI Group LLC*, 122 F.4th at 715. As to the first question, "Yes" must be the answer. There is no dispute that Nguyen did, in fact, agree to arbitrate. He agreed when he signed his Form U-4. ECF 12-1 at 27, 44 ("I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . ."). And while one agreement to arbitrate would be sufficient to compel arbitration, he also agreed when he signed his offer letter (which incorporated his agreement to arbitrate).

11

ECF 12-1 at 52-54, 60 ("You and Wells Fargo mutually agree to final and binding arbitration of your employment disputes when they cannot be resolved internally" and "Wells Fargo and I agree to waive our rights to pursue any Claims in court or before a jury").  And he agreed when he signed his promissory note.  ECF 12-1 at 62-65 ("You and Wells Fargo Advisors are waiving the right to bring any claims/actions noted herein in a court or before a jury").  He even signed letters acknowledging that he agreed to arbitrate.  ECF 12-1 at 48, 49 ("[by] signing the form U-4 . . . you are giving up the right to sue . . . including the right to a trial by jury.") (emphasis added).  Nguyen doesn't deny that he actually signed any of these documents, or that they in fact contain arbitration clauses which unambiguously waive his right to a jury trial and require him to arbitrate.   But whatever roadblocks Nguyen attempts to construct to block the enforceability of these additional employment documents, he cannot maneuver around the fact that by signing the Form U-4, Nguyen and Wells Fargo agreed to arbitrate their disputes.

The second question remains: what does their arbitration agreement cover? The answer, according to the Form U-4 and FINRA's rules, is any disputes arising out of their business activities.  To be sure, Nguyen's claims against Wells Fargo fall within this ambit, for Nguyen alleges he was tricked into coming back to Wells Fargo (to conduct his business activities for Wells Fargo as part of its business

12

activities) with the promise of a no-strings-attached bonus, and that he wasn't able to effectively service his clients (i.e., conduct his business activities) because Wells Fargo didn't provide him with a working email account and phone number (as part of its business activities), all of which led to his eventual constructive discharge (i.e., the cessation of his business activities on behalf of Wells Fargo). This remains so, even if (as Nguyen argues) Wells Fargo made fraudulent statements to Nguyen prior to the start of his employment as an inducement to accept the offer, as "the phrase business activities is quite broad." *Griffis v. Wells Fargo Advisors, LLC*, 2014 WL 3027683, at *3 (N.D. Ill. July 3, 2014) (cleaned up). "Business activities" as used in FINRA's rules and the Form U-4 signed by Nguyen and Wells Fargo properly encompasses claims premised on allegations that the conditions of employment were different than promised. *Id.* at *3-*4 (compelling advisor to arbitrate employment claims, including that he was fraudulently promised a transition bonus with no repayment strings attached but then was required to sign a promissory note, against Wells Fargo based on the language of the Form U-4). "Disputes concerning employee compensation are an arbitrable dispute arising out of a business activity between a member and an associated person." *Osborne v. Wells Fargo Advisors, LLC*, 2012 WL 2952533, at *4 (M.D. Fla. July 19, 2012). As the business activities of Nguyen and Wells Fargo unquestionably lie at the heart of Nguyen's complaints, they are arbitrable. *See id.*

13

(disputes over the enforceability of promissory notes evidencing forgivable loan between advisor and Wells Fargo are disputes over "business activities" that must be arbitrated under Form U-4 and FINRA's rules because "the promissory notes plaintiff executed with defendant did not arise from any side businesses of the parties but from their employer-employee relationship.") (cleaned up); *Roberts v. Wells Fargo Clearing Services, LLC*, 2022 WL 16826715, at *3 (11th Cir. Nov. 9, 2022) (action brought by financial advisor challenging Wells Fargo's ability to collect on promissory notes he signed is arbitrable under Form U-4 and FINRA's rules as dispute concerning "business activities").

On the basis of the Form U-4, courts have routinely ordered financial advisors to arbitrate claims identical to Nguyen's. *See, e.g.*, *Griffis*, 2014 WL 3027683, at *3; *Osborne.* 2012 WL 2952533, at *4; *Lewis v. UBS Financial Services, Inc.*, 818 F. Supp. 2d 1161, 1164 (N.D. Cal. 2011) (compelling arbitration of employment claims challenging the enforceability of forgivable loans secured by promissory notes brought by advisor against broker-dealer where the advisor executed a Form U-4, two promissory notes, and two additional agreements which all contained arbitration clauses); *Murray v. Citigroup Global Markets, Inc.*, 2009 WL 4280586, at *2-*3 (N.D. Ohio Nov. 24, 2009) (granting a broker-dealer's motion to compel arbitration in case where advisor alleged he was fraudulently induced to sign a promissory note for his bonus because "Form U-4

14

clearly includes an arbitration provision which applies and clearly the issues here require arbitration since they arose out of advisor's activities, employment and termination" and "the Note arose as a result of employment and upon termination the unpaid balance alleged due clearly arose pursuant to the Note, thus, there exists a dispute arising out of employment;" validity of the promissory note and Form U-4 are for the arbitrator to decide) (cleaned up).

So, too, have courts required brokers to arbitrate based on their promissory notes and employment agreements evidencing their forgivable loan bonus payments. *See, e.g., Hook v. UBS Financial Services, Inc.*, 2011 WL 1741997, at *5 (D. Conn. May 4, 2011) (granting broker-dealer's motion to compel arbitration because "the promissory note's broad arbitration clause requires that challenges to the validity of the Note (and to its arbitration provision) must be determined by arbitrators, including plaintiff's claims of fraudulent inducement.") (cleaned up); *Banus v. Citigroup Global Markets, Inc.*, 2010 WL 1643780, at *7-*8, *10 (S.D.N.Y. Apr. 23, 2010) (promissory notes and employment agreements evidencing forgivable loans which contain agreements to arbitrate through FINRA are valid and enforceable; arguments that the note was a contract of adhesion or unconscionable and therefore unenforceable were arguments for arbitrator and did not void agreement to arbitrate; plaintiffs' arguments respecting unconscionability "are at war with the most basic principles of the law of contracts. Plaintiffs signed

the Notes, received substantial loan proceeds (interest free), and had the ability to use those proceeds for any purpose they chose, not least of them being the investment of the loan proceeds to generate interest income or capital gains.  There was no lack of consideration or mutuality.") (cleaned up).

Nguyen does not cite any cases reaching the opposite conclusion of these courts.  He only attempts to distinguish their relevance by noting they were decided before *Jarkesy*.  But as *Jarkesy* does not apply either to this case or those cited above, that factor is not significant in terms of their persuasiveness.

By signing the Form U-4, Nguyen agreed to arbitrate the claims at issue in this case, so the motion to compel will be granted and this case will be stayed while the parties proceed to arbitration under FINA's rules.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to stay and compel arbitration [11] is granted, the parties will proceed to arbitration under the Financial Industry Regulatory Authority Rules, and **this case is stayed pending a final award from the arbitrator**.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 7th day of February, 2025.

16